UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-cv-23008-GAYLES

**JASPER R. KIRTSEY**,

    Plaintiff,

v.

**DR. FRANCK K. PAPILLON**,

    Defendant.

_____/

**ORDER DENYING DR. PAPILLON'S MOTION TO DISMISS &
DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Preliminary Injunction [ECF No. 12] and Defendant Dr. Franck Papillon's Motion to Dismiss Plaintiff's Amended Complaint. [ECF No. 25]. Plaintiff requests that the Court issue a preliminary injunction to command prison officials to perform a knee replacement surgery. [ECF No. 12 at 2]. In contrast, Defendant argues that Plaintiff's Amended Complaint fails to state an Eighth Amendment deliberate indifference to medical needs claim because: (1) Plaintiff failed to demonstrate that he has a "serious medical need," (2) Dr. Papillon's failure to perform knee surgery was not the product of deliberate indifference, and (3) Plaintiff failed to demonstrate a causal relationship between Dr. Papillon's actions and Plaintiff's injuries.

Having reviewed the Amended Complaint [ECF No. 11], the Motion for Preliminary Injunction [ECF No. 12], the Motion to Dismiss [ECF No. 25], the respective responses [ECF Nos. 24, 26], and the relevant record, the Court concludes that both the Motion for Preliminary Injunction and Motion to Dismiss must be **DENIED**.

## I. BACKGROUND

The Court begins by recounting the essential factual allegations in Plaintiff's Amended Complaint. [ECF No. 11]. Plaintiff, a prisoner in the custody of the Florida Department of Corrections, was transferred to Dade Correctional Institution ("Dade C.I.") on August 12, 2020. *Id.* at 1. On February 10, 2021, Plaintiff was transported to the Reception and Medical Center ("RMC") so that "Dr. Rayn" could take an x-ray of Plaintiff's right knee. *Id.* While the Amended Complaint does not describe what the x-rays revealed, Dr. Rayn ultimately recommended that Plaintiff receive a right knee replacement and that the surgery could be performed within four to six weeks. *Id.* Plaintiff agreed and gave Dr. Rayn written permission to perform the surgery. *Id.* at 3.

Plaintiff was transferred back to Dade C.I. on February 12, 2021. *Id.* Upon his arrival, Plaintiff informed Dr. Papillon, the head physician at Dade C.I., that he would have to be transferred back to RMC to have the knee replacement surgery in approximately three weeks. *Id.* Many months later, on May 20, 2021, Dr. Papillon met with Plaintiff to explain that the surgery would not commence because Plaintiff had not "completed all the paperwork to have me transfer[red] for surgery at RMC." *Id.* When Plaintiff showed Dr. Papillon his swollen right knee and asked for pain medication, Dr. Papillon purportedly refused to provide the medication and told Plaintiff that "I should stop filing grievance[s] [against] him, or I might not [ever] have the surgery." *Id.* Plaintiff alleges that, as a result of this delay in providing the surgery, he is "now a cripple confined to a wheelchair" and that other medical personnel employed by the Florida Department of Corrections are now refusing to conduct the surgery do to its cost. *Id.* at 4.

## II. LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). The dispositive question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (internal quotation and citation omitted).

To state a claim for relief under § 1983, a plaintiff must show that he was deprived of a federal right by a person acting under color of state law. *See Griffin v. City of Opa Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). *Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1979) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). Nevertheless, the Court does not have "license to serve as de facto counsel

for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain one, the moving party must establish four separate requirements—namely, that: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Jones v. Governor of Fla.*, 950 F.3d 795, 806 (11th Cir. 2020) (quotation omitted). The Court may consider additional evidence provided by the parties to determine whether a preliminary injunction is appropriate. *See Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995); *see also Alabama v. United States Dep't of Commerce*, 546 F. Supp. 3d 1057, 1063 (M.D. Ala. 2021) ("[When ruling on a preliminary injunction,] [t]he court may also consider supplemental evidence, even hearsay evidence, submitted by the parties.").

The scope of court authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act ("PLRA"). *See Nelson v. Campbell*, 541 U.S. 637, 650 (2004). Under the PLRA, "preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Ga. Advoc. Off. v. Jackson*, 4 F.4th 1200, 1206–07 (11th Cir. 2021) (holding that the PLRA prevents a preliminary injunction from issuing unless it meets the statute's "need-narrowness-intrusiveness requirements"). In addition, "[t]he court shall give substantial weight to any adverse impact on

public safety or the operation of a criminal justice system caused by the relief." 18 U.S.C. § 3626(a)(1)(A).

### III. DISCUSSION

#### A. The Motion to Dismiss Should be Denied

"[D]eliberate indifference to [the] serious medical needs of prisoners" constitutes an Eighth Amendment violation that is redressable under § 1983. *Estelle*, 429 U.S. at 104. To prove deliberate indifference, a plaintiff must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009) (citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)). Plaintiff argues that the Amended Complaint has failed to establish all three of these essential elements. [ECF No. 25 at 5–6].

Prior to the instant motion to dismiss, the Court screened Plaintiff's Amended Complaint in accordance with the provisions of 28 U.S.C. §§ 1915(e) and 1915A. While the Court dismissed all of the other claims against all the other defendants, it allowed the deliberate indifference claim against Dr. Papillon to proceed. The Court reasoned that:

> These allegations are sufficient to state a claim for deliberate indifference to serious medical needs against Dr. Papillon. "[A] defendant who delays necessary treatment for non-medical reasons may exhibit deliberate indifference." *Farrow v. West*, 320 F.3d 1235, 1246 (11th Cir. 2003). "Delay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation and citation omitted). Here, Plaintiff has alleged that Dr. Papillon has deliberately delayed his knee replacement surgery for non-medical reasons, telling Plaintiff to "stop filing grievances" or he "might never have the surgery." [ECF No. 11 at 3]. Plaintiff further alleges that Dr. Papillon refused to prescribe pain medication and that he is now confined to a wheelchair as a result of the delay in surgery. *Id*. Thus, Plaintiff has sufficiently alleged that Dr. Papillon delayed treatment for non-medical reasons, and that this delay, along with his refusal to provide pain medication, "was tantamount to unnecessary and wanton infliction of pain." *Hill*, 40 F.3d at 1187.

[ECF No. 15 at 2–3]. Having already screened the Amended Complaint, the Court already reviewed the sufficiency of Plaintiff's claim against Dr. Papillon under the same Rule 12(b)(6) standard that applies to all motions to dismiss. *See Mitchell v. Farcass*, 112 F.3d 1483, 1489–90 (11th Cir. 1997). Dr. Papillon himself admits that his motion to dismiss is essentially a motion to reconsider the Court's previous decision to allow the deliberate indifference claim to proceed. [ECF No. 25 at 2–3]. Upon review, the Court stands by its original reasoning and will deny the motion to dismiss.

      First, the Court does not agree with Dr. Papillon's argument that Plaintiff failed to demonstrate that his knee replacement constituted a "serious medical need." [ECF No. 25 at 6]. Dr. Papillon himself cites *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) for the proposition that a serious medical need arises when "if left unattended, [it] poses a substantial risk of serious harm." *Id.* Plaintiff has alleged that the delay in approving knee replacement surgery has rendered him wheelchair-bound, [ECF No. 11 at 4], and the Court finds that this allegation is enough to show that the delay in providing the surgery caused Plaintiff's physical condition to deteriorate to the point that he can longer walk on his own, *see Taylor*, 221 F.3d at 1258. The Court acknowledges Dr. Papillon's argument that Plaintiff's allegations are that the knee replacement surgery was "recommended" rather than mandatory, [ECF No. 25 at 6], but Plaintiff has also alleged that the surgery was necessary by showing that the delay has rendered him non-ambulatory. *See Andrews v. Boyd*, No. 15-cv-00045, 2016 WL 7223301, at *10 (N.D. Ala. Nov. 14, 2016) (finding that an ailment which causes "the patient severe pain and loss of mobility [is] a serious medical need that even a lay person would recognize the need for treatment"), *report and recommendation adopted*, 2016 WL 7210388 (N.D. Ala. Dec. 13, 2016). The Court finds that these allegations are sufficient under the Rule 12(b)(6) standard. *See Bishop*, 817 F.3d at 1270.

Second, the Amended Complaint alleges that Dr. Papillon was, in fact, deliberately indifferent to Plaintiff's need for knee replacement surgery. To meet this burden, Plaintiff is required to show that Dr. Papillon had "subjective knowledge of a risk of serious harm," that Dr. Papillon disregarded that risk, and that Dr. Papillon's conduct was "more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Dr. Papillon concedes that he had knowledge of Plaintiff's request to have knee surgery, and the Court finds that Plaintiff has alleged that Dr. Papillon disregarded that knowledge through conduct that was greater than negligence. [ECF No. 25 at 9]. To begin, Plaintiff has demonstrated that Dr. Papillon may have denied him medical care for a non-medical reason. *See Farrow*, 320 F.3d at 1246. By construing the Amended Complaint liberally, as the Court must at this stage of the proceedings, Plaintiff appears to contend that he had already completed the necessary "paperwork" to undergo knee replacement surgery in February 2021, and that the additional "paperwork" mentioned by Dr. Papillon was a pretext to delay the surgery further. [ECF No. 11 at 3–4]. Dr. Papillon then purportedly threatened Plaintiff by implying that he would never receive the surgery if Plaintiff kept filing grievances, indicating that there was also a personal animus directing Dr. Papillon's actions. *Id.* at 3. As the Court previously found, these allegations, if true, demonstrate a deliberate indifference to Plaintiff's medical condition by causing Plaintiff to endure an "unnecessary and wanton infliction of pain" for a non-medical rationale. *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994).

Next, Plaintiff has also shown enough for the Court to infer that Dr. Papillon was more than negligent. "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th

Cir. 2011). By refusing to approve Plaintiff's knee replacement surgery, or even give Plaintiff pain medication to alleviate the effects of his swollen knee, Plaintiff has alleged that Dr. Papillon's care was "grossly inadequate." *See Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997) ("[A]n official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate.").

Finally, the Court finds that the Amended Complaint has raised just enough factual allegations to support a causal link between Dr. Papillon and Plaintiff's current injury. It is true that Plaintiff admits that other officials at other correctional facilities have contributed to delaying his surgery—not just Dr. Papillon. [ECF No. 11 at 4]. Still, the Amended Complaint alleges that the loss of Plaintiff's mobility can be attributed to Dr. Papillon's *individual decision* to delay Plaintiff's surgery, and not to any other person employed by the Florida Department of Corrections. *See id.* at 3–4 (arguing that Dr. Papillon's deliberate decision to "prolong performing surgery" has "cause[d] substantial risk of harm[,] Plaintiff is now a cripple confined to a wheelchair"). This is, indeed, a close call, but Rule 12(b)(6) requires the Court to "accept all well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor." *Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017).[1] Accordingly, the Court finds that the Amended Complaint has pled sufficient facts to show that Plaintiff has "a serious medical need," that Dr. Papillon exhibited "deliberate indifference to that need," and that there is "causation

---

[1] Nevertheless, the Court notes that Dr. Papillon raises valid concerns about the ultimate viability of Plaintiff's claims. Specifically, Dr. Papillon strenuously asserts that this whole dispute merely boils down to "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment." [ECF No. 25 at 10] (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). This argument is ill-suited for the motion to dismiss stage since the Court must assume that Plaintiff's allegations are true and must draw every reasonable inference in his favor. Of course, nothing in this order precludes Dr. Papillon from raising similar arguments at the summary judgment stage, where he will be able to rebut Plaintiff's allegations with his own evidence.

between that indifference and the plaintiff's injury." *Mann*, 588 F.3d at 1306–07. Therefore, Dr. Papillon's Motion to Dismiss must be DENIED.

## B. The Motion for Preliminary Injunction is Also Denied

The Court also finds that Plaintiff's Motion for Preliminary Injunction must also be denied. Plaintiff requests an injunction to command the Defendants in this case to "send the Petitioner [to] RMC to have surgery on his right knee." [ECF No. 12 at 2]. Although the Amended Complaint (and the Motion for Preliminary Injunction) named several defendants, Dr. Papillon is the only remaining defendant in this action. [ECF No. 15 at 4–5] (dismissing all claims against Defendants Centurion of Florida, LLC and Secretary of the Florida Department of Corrections, Mark S. Inch). Therefore, the scope of this Court's injunction would be limited to Dr. Papillon.

The Court cannot ascertain a way that it could issue an injunction that would both: (1) only apply to Dr. Papillon and (2) give Plaintiff what he wants—surgery on his right knee. The PLRA prevents the Court from issuing an injunction unless the relief requested "is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). Dr. Papillon has provided evidence that a legion of other correctional personnel, not just him, would be involved in the transportation and treatment of Plaintiff. [ECF No. 24 at 2–6]. Naturally, an injunction requiring Dr. Papillon to effectuate Plaintiff's knee replacement surgery would essentially be meaningless unless the Court expanded it to include other, unidentified persons that are outside the scope of this action—making it impossible to "narrowly draw" the relief. *See Melendez v. Dixon*, No. 20-cv-01023, 2022 WL 281270, at *4 (M.D. Fla. Jan. 31, 2022) (declining to issue a preliminary injunction which would have transferred the plaintiff to another facility for inpatient treatment), *aff'd sub nom. Melendez v. Sec'y, Fla. Dep't of Corr.*, No. 22-10306, 2022

WL 1124753 (11th Cir. Apr. 15, 2022). The injunction could also become moot if Plaintiff was ever moved from Dade C.I., which has already happened multiple times, since Dr. Papillon has no authority over Plaintiff's medical needs unless he is incarcerated at Dade C.I. [ECF No. 24-2 at 1–2]. Because it is effectively impossible for any preliminary injunction to meet the "need-narrowness-intrusiveness" requirements of the PLRA, the Court must deny Plaintiff's request for a preliminary injunction. *See Cason v. Seckinger*, 231 F.3d 777, 784–85 (11th Cir. 2000).

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Dr. Franck K. Papillon's Motion to Dismiss [ECF No. 25] is **DENIED**.

2. Plaintiff's Motion for Preliminary Injunction [ECF No. 12] is also **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 1st day of August, 2022.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc:   **Jasper R. Kirtsey**, *pro se*
049114
Dade Correctional Institution
Inmate Mail/Parcels
19000 SW 377th Street
Florida City, FL 33034

Counsel of record